UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 10-22467-CIV-SEITZ/SIMONTON

VERTILE JEAN, *et al.,*

        Plaintiffs,

vs.

JOHN C. TORRESE, *et al.*,

        Defendants

_____/

## ORDER GRANTING MOTION FOR CLASS CERTIFICATION

This matter is before the Court on Plaintiffs' Motion for Declaration of a Class Action [DE-63]. Defendants have not filed a response but have agreed to the stipulated facts supporting the motion. This action arises from Defendants' alleged failure to pay wages in violation of the Migrant and Seasonal Agricultural Worker Protection Act (AWPA), 29 U.S.C. § 1801, *et seq.*, and the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*, that occurred during the 2009-2010 bean harvest in south Miami-Dade County, Florida. Because the Plaintiffs have satisfied all of the requirements of Federal Rule of Civil Procedure 23, the Motion for Declaration of a Class Action is granted, with the modification that the class members be workers furnished by San Judas Tadeo Transport, Inc.

## I.  Factual Background[1]

Defendant T-N-T Farms, Inc. operated a farm that employed the Plaintiffs and other migrant or seasonal agricultural workers. Defendants Eric Scott Torrese and John Clinton

---

[1] These facts are based on the allegations in the Amended Complaint, the Stipulations of Fact [DE-63-1] filed by the parties in relation to the Motion for Class Certification, and the Affidavit of Armando Guadamuz [DE-63-2].

Torrese are the co-owners of T-N-T Farms.  This action was brought by 49 seasonal farm

workers, who worked at T-N-T Farms during the 2009-10 bean harvest season.  The Plaintiffs

allege in Count I of the Amended Complaint that, during the 2009-10 bean harvest season, the

Defendants violated AWPA by not complying with its provisions regarding record-keeping,

wage statements, and payment of wages.  Plaintiffs allege in Count II of the Amended Complaint

that Defendants violated the FLSA's minimum wage provisions.  Plaintiffs' Amended Complaint

seeks monetary damages, declaratory relief, and injunctive relief.

     *A.  Provision of the Workers By San Judas Tadeo Transport*

     The Amended Complaint alleges that Defendants paid the Plaintiffs and the putative class

members less than the federal minimum wage for their work as bean pickers during the 2009-10

bean harvest season.  The motion to certify identifies 32 of the 49 Plaintiffs as class

representatives.  These proposed class representatives were part of a group of over 300 bean

pickers supplied to Defendants during the 2009-10 bean harvest by San Judas Tadeo Transport,

Inc.  The majority of workers provided to Defendants by San Judas Tadeo Transport were

employed hand-harvesting beans.  However, some of the workers provided by San Judas Tadeo

Transport worked as "luggers," whose job duties were to weigh the boxes of beans filled by the

pickers.  The Court assumes that the seventeen Plaintiffs not named as class representatives were

either luggers or do not wish to be class representatives.

     During the 2009-10 harvest season, San Judas Tadeo Transport provided transportation to

some, but not all, of the workers who were employed as pickers and luggers; some of the workers

recruited by San Judas Tadeo Transport provided their own transportation to the field or made

their own arrangements for transportation.  Once the work eligibility of workers recruited by San

Judas Tadeo Transport was established, the workers were placed on T-N-T Farms' payroll as employees of T-N-T Farms. All of the workers who were placed on payroll were paid with T-N-T Farms checks.

### B. Method of Calculating Payment

The bean pickers furnished to T-N-T Farms by San Judas Tadeo Transport were paid on a piece rate basis for their work, at a rate of $3.65 per box. T-N-T Farms computed the weekly earnings of the pickers based on data collected by Armando Guadamuz, an employee of T-N-T Farms. T-N-T Farms provided Guadamuz with forms on which he entered data showing the individual bean pickers' piece rate production, which is the number of boxes harvested, and the hours worked by each picker during the payroll period. Guadamuz was also supposed to record the actual starting and stopping times of each picker, but he did not do so. The data recorded by Guadamuz was entered into T-N-T Farms' payroll software program, which calculated each worker's earnings and withholdings. All of T-N-T Farms' wage calculations for the workers provided by San Judas Tadeo Transport were made based on the data provided by Guadamuz.

For any bean picker whose weekly piece-rate earnings did not exceed the minimum wage of $7.25 per hour for the hours worked, as recorded by Guadamuz, T-N-T Farms' software program would automatically supplement the worker's gross piece-rate earnings so that his or her weekly gross wages paid would equal the minimum wage. T-N-T Farms' records confirm that the number of boxes Guadamuz reported to have been picked equaled the number of boxes received in T-N-T Farms' warehouse.

Guadamuz did not actually keep track of the hours worked by the pickers. Instead, Guadamuz used a formula to calculate the pickers' hours. The formula assumed that each picker

3

picked two boxes an hour.  Guadamuz obtained the number of boxes picked by each worker from employees of San Judas Tadeo Transport, who recorded the number of boxes picked per worker. Based on the number of boxes picked per worker and the assumption that each worker picked two boxes per hour, Guadamuz would record the hours worked and create starting and stopping times to match the hours.  Thus, a picker who picked less than two boxes an hour would have less time recorded than he or she actually worked.[2]  Guadamuz used this formula to estimate the time worked for all of the pickers except the very fast pickers who picked many boxes in one day because using the formula would result in those workers being recorded as having worked an unreasonably high number of hours.

Guadamuz also recorded the hours worked by the luggers provided by San Judas Tadeo Transport and that data was used by T-N-T Farms to calculate the wages for the luggers. The luggers furnished to T-N-T Farms by San Judas Tadeo Transport were paid at the rate of $8.00 per hour.  Guadamuz recorded the actual starting and stopping times for the luggers and that data was input into T-N-T Farms' software program, which calculated each lugger's pay and withholdings.

According to Guadamuz, most pickers worked approximately the same number of hours that the luggers worked.  Therefore, the pickers' true hours worked could be reasonably estimated by looking at the number of hours worked by the luggers, less any time that luggers were paid for driving the buses to the field.

---

[2]For example, if a worker only picked one box an hour for eight hours, Guadamuz would record that that picker had worked for four hours (8 boxes divided by 2 boxes per hour) for the day.

4

*C. The Litigation*

Plaintiffs seek to certify the following class:

All migrant and seasonal agricultural workers, as defined by the AWPA, who were employed as bean pickers on the operations of the Defendants at any time during the 2009-10 Miami-Dade County bean harvest, extending from approximately November 15, 2009 through May 15, 2010, and who were paid for this labor by checks drawn on the account of T-N-T Farms, Inc.

Plaintiffs seek to have 32 of the 49 named Plaintiffs designated class representatives, namely:

Vertile Jean, Arne Madeleine Anela, Prinston Anilus, Francoise Marie Beauzile, Marie Jeanne Colas Cadet, Marie Marthe Cadet, Yrlande Cajou Colon, Gyslene Ariane Calixte, Marie Josee Calixte, Cadeus Chaleus, Juslaine Cherelus, Dalestin Cherenfant, Sifort Contreker, Marie I. Desruisseau, St. Gelus Dufresne, Jacqueline Exile, Marie Jolina Fleurio, Pierre N. Fleurio, Jeannette Francime, Norius Gelin, Jean Michel Jeune, Christon Joseph, Merancia Joseph, Anite Labrousse, Edel Joseph Mayard, Antoinette Ogeris, Jean Felix Philius, Jeannide Pierre, Miracia Alexis Serve, Sernitude Romeus Tima, Nicolas Zidor and Villandier Zidor.

During the 2009-10 bean harvest season, T-N-T Farms had crews working the fields that were not provided by San Judas Tadeo Transport.  Plaintiffs have not provided any information regarding how the workers not provided by San Judas Tadeo Transport were compensated. These individuals are not included in the class.

## II. Analysis

### A.  Plaintiffs Have Standing to Pursue the AWPA Claim

Prior to determining whether a proposed class meets the requirements of Federal Rule of Civil Procedure 23, a district court must first determine whether the class representative has Article III standing to raise the class claims. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265

5

(11th Cir. 2009); *Prado-Steinman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000). Thus, "a plaintiff must allege and show that he personally suffered injury." *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987).

Here, there is no question that the bean picker Plaintiffs suffered the same injury as the proposed class. The hours for all of the pickers were calculated using a 2 box per hour formula, regardless of the actual number of hours worked. Furthermore, one person, Armando Guadamuz, was responsible for recording the time of all of the bean pickers provided to Defendants by San Judas Tadeo Transport. As a result, the same formula of two boxes an hour was used to compute the hours worked for all of the bean pickers provided by San Judas Tadea Transport, including the proposed class representatives and the putative class members. Thus, the Plaintiffs have suffered the same injury as the proposed class members who were provided to Defendants by T-N-T Farms and have standing to bring this action.

The proposed class, however, includes all bean pickers at T-N-T Farms during the 2009-10 harvest season; that would include those bean pickers provided by San Judas Tadeo Transport plus other bean pickers. However, Plaintiffs have not provided any evidence regarding the method for calculating the payment of bean pickers not provided by San Judas Tadeo Transport. Thus, there is no evidence that the other bean pickers were compensated in the same manner. Therefore, it is only clear that Plaintiffs have suffered the same injury as those bean pickers that San Judas Tadeo Transport provided. Accordingly, the proposed class must be modified as follows

> All migrant and seasonal agricultural workers, as defined by the AWPA, *who were furnished to Defendants by Jan Judas Tadeo Transport, Inc.*, who were employed as bean pickers on the operations of the Defendants at any time during the 2009-10 Miami-Dade

County bean harvest, extending from approximately November 15, 2009 through May 15, 2010, and who were paid for this labor by checks drawn on the account of T-N-T Farms, Inc.

Thus, the bean picker Plaintiffs have standing to bring this action on behalf of the redefined putative class.

### B.  The Requirements of Rule 23(a) Have Been Met

 Pursuant to Rule 23(a), prior to certification of a class, four prerequisites must be met. They are:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  As set out in more detail below, these prerequisites have been met.

#### 1.  *Numerosity*

Rule 23(a)(1) requires that the class size be such that joinder of all members is impracticable.  Generally, "less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (citation omitted).  Here, the parties have stipulated that San Judas Tadeo Transport provided Defendants in excess of 300 bean pickers during the 2009-10 harvest season.  Furthermore, the claims of the individual members are relatively small and many do not speak English fluently making it unlikely that they would file individual suits against Defendants.  Thus, the numerosity requirement has been met.

7

### 2. Common Questions of Law or Fact

Rule 23(a)(2) requires that there be common issues of fact or law. The rule, however, does not require that all of the questions of law or fact raised be common. *Cox*, 784 F.2d at 1557. Instead, commonality requires that the action "involve issues that are susceptible to class-wide proof." *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001). Here, common questions of fact exist because Plaintiffs allege that Defendants failed to adequately record Plaintiffs' working hours. All of Plaintiffs' hours were recorded by a single person using the same method. Thus, there are common issues of fact regarding all Plaintiffs and all putative class members. Plaintiffs also assert that, at least one common issue of law exists, as the Court will have to determine whether Defendants' AWPA violations were intentional under the statute. Thus, the commonality requirement has been met.

### 3. Typicality

Under Rule 23(a)(3), the claims of the representative parties must be typical of the claims of the members of the class. Thus, typicality refers to the individual characteristics of the named plaintiff in relation to the class. *Vega*, 564 F.3d at 1275. The Eleventh Circuit has described typicality as a

> a nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class. A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory. Typicality, however, does not require identical claims or defenses. A factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class.

*Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); *see also Prado-Steinman*, 221 F.3d at 1279 n.14. The Plaintiffs' claims and the class claims are all based on the

Defendants' timekeeping practices, including Armando Guadamuz's timekeeping methods. Thus, the basis of the named Plaintiffs' claims is the same as the basis of the class claims. Both the named Plaintiffs' and the class members' claims are based on the same conduct of Defendants and Guadamuz – improper timekeeping. Consequently, Plaintiffs have established typicality.

### 4.  *Adequacy of Protection of Class Interests*

The last prerequisite of Rule 23(a) is that the class representatives fairly and adequately protect the interests of the class. The adequacy of representation analysis requires two inquiries: "(1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003). A fundamental conflict of interest exists where some class members claimed to be harmed by the same conduct that benefits the class representatives. *Id.* Here, no such conflict exists. All members of the class will benefit from Plaintiffs' prosecution of this action. All members of the class, as well as the class representatives, will benefit from the relief sought by receiving damages for AWPA violations. Plaintiffs and Plaintiffs' counsel will adequately prosecute this action. Plaintiffs' counsel has represented migrant workers in numerous matters, including class actions.[3] Thus, the last prerequisite to bringing a class action has been met.

---

[3]These cases include: *Morante-Navarro v. T & Y Pine Straw, Inc.*, 350 F.3d 1163 (11th Cir. 2003); *Napoles-Arcila v. Pero Family Farms, LLC*, 2009 WL 1585970 (S.D. Fla. June 4, 2009); *Moreno-Espinosa v. J & J Ag Products, Inc.*, 247 F.R.D. 686 (S.D. Fla. 2007); *Silva-Arriaga v. Texas Express, Inc.*, 222 F.R.D 684 (M.D. Fla. 2004).

C.  The Requirements of Rule 23(b)(3) Have Been Met

In order to obtain class certification, a plaintiff must show that the prerequisites set out in

Rule 23(a) have been met and that one of the alternative requirements of Rule 23(b) have been

met.  *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1279 (11th Cir. 2000).  In this case,

Plaintiffs move for class certification under Rule 23(b)(3), which states that a class action may be

maintained if:

> the court finds that the questions of law or fact common to class members predominate
> over any questions affecting only individual members, and that a class action is superior
> to other available methods for fairly and efficiently adjudicating the controversy. The
> matters pertinent to these findings include:
>> (A) the class members' interests in individually controlling the prosecution or
>> defense of separate actions;
>> (B) the extent and nature of any litigation concerning the controversy already
>> begun by or against class members;
>> (C) the desirability or undesirability of concentrating the litigation of the claims in
>> the particular forum; and
>> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).  As discussed in more detail below, Plaintiffs have met the requirements

of Rule 23(b)(3).

### 1.  Common Questions of Law and Fact Predominate

Under Rule 23(b)(3),  "the issues in the class action that are subject to generalized proof,

and thus applicable to the class as a whole, must predominate over those issues that are subject

only to individualized proof." *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th

Cir. 1997) (citation omitted).  To determine if an issue predominates, a court must consider what

value the resolution of the class-wide issue will have in each class member's underlying cause of

action.  *Rutstein v. Avis Rent-A-Car Systems, Inc.*, 211 F.3d 1228, 1234 (11th Cir. 2000).  In this

case, common questions of law and fact predominate.  Plaintiffs argue that Defendants used the

same timekeeping method for all of the class members and, in fact, used the same person to record the time for all of the class members. Thus, the resolution of any legal issues involving this timekeeping procedure will be exactly the same for all of the members of the class. The resolution of this issue will benefit all of the members of the class equally. Therefore, the class legal issues subsume the individual ones and resolution of the class issues will resolve the individual issues. Additionally, Plaintiffs point out that the same method may be used to calculate the wage under-payments of all of the members of the class. Furthermore, Plaintiffs seek statutory damages under AWPA with regard to the record-keeping and wage statement claims. Consequently, Plaintiffs have established that common questions of law and fact predominate.

### 2. Class Action is Superior to Other Methods of Adjudication

In order to certify a class under Rule 23(b)(3), a court must find that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In making this determination, a court should consider the non-exclusive factors set out in the rule: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action. Considering these factors leads to the conclusion that a class action is the superior method of adjudication.

The first factor weighs in favor of class certification. Given that most of the class members are not proficient in English and are indigent, and that the individual recoveries will be

11

relatively small, it seems unlikely that the class members would want to, much less could, control their own action. The second factor also weighs in favor of class certification. There have been no other lawsuits filed by members of the putative class. The third factor weighs in favor of class treatment because the Defendants are located in this district, the evidence is located in this district, and many of the Plaintiffs are located in this district. The last factor does not disfavor class treatment. No possible administrative issues have been presented and the Court does not foresee any that would cause any real difficulty. Furthermore, resolving the legal issues in this matter as part of a class action would lead to economies of time, effort, and expense for the parties and the Court. Thus, the superiority requirement has been met.

Accordingly, it is hereby

ORDERED that Plaintiffs' Motion for Declaration of a Class Action [DE-63] is GRANTED with a modification of the class definition. The definition of the class shall be:

All migrant and seasonal agricultural workers, as defined by the AWPA, who were furnished to Defendants by Jan Judas Tadeo Transport, Inc., who were employed as bean pickers on the operations of the Defendants at any time during the 2009-10 Miami-Dade County bean harvest, extending from approximately November 15, 2009 through May 15, 2010, and who were paid for this labor by checks drawn on the account of T-N-T Farms, Inc.

DONE and ORDERED in Miami, Florida, this _15_ᵀᴴ day of November, 2011.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:     All Counsel of Record

12